Argued and submitted July 24, vacated and remanded in part; otherwise affirmed
October 15, 2003

Zane D. CHURCH,
Personal Representative of the Estate of
Elden L. Church,
*Appellant,*

*v.*

Denise WOODS,
*Respondent.*

00P-1599; A116435

77 P3d 1150

Norman R. Hill argued the cause for appellant. With him on the briefs was Webb, Martinis & Hill.

Gary G. Jones argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Plaintiff, the personal representative of the estate of Elden Church, brought this action against defendant for rescission of transfers of interests in Elden's real and personal property. In separate claims for rescission, plaintiff alleged that Elden lacked the capacity to execute the transfers and that, in procuring them, defendant exerted undue influence over Elden. In a third claim, plaintiff alleged that defendant procured the transfers through financial abuse within the meaning of ORS 124.110.[1] Plaintiff sought attorney fees and a conservator fee on that claim under ORS 124.100(1)(c) and (d).[2] The trial court rescinded the challenged transactions on the ground that Elden lacked the capacity to make them, but it dismissed the undue influence claim. In addition, the court dismissed the financial abuse claim on the ground that defendant did not take or appropriate Elden's property as provided in ORS 124.110(1)(a). Plaintiff appeals from the judgment dismissing the financial abuse claim.[3] We vacate the judgment dismissing that claim and remand.

The following facts are not in dispute. In February 2000, Elden was an 83-year-old bachelor with no children who lived with plaintiff, his brother, near Christmas Valley. Elden had prostate cancer, became easily disoriented, and relied heavily on his family for his daily care. Concerned about Elden's mental health, plaintiff took Elden to a neurologist, who diagnosed him with Alzheimer's disease. Elden's

---

[1] ORS 124.110 provides, in part:

"(1) An action may be brought under ORS 124.100 for financial abuse in the following circumstances:

"(a) When a person wrongfully takes or appropriates money or property of an elderly or incapacitated person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the elderly or incapacitated person."

[2] ORS 124.100(1)(c) and (d) provide that the court shall award to a prevailing plaintiff in a financial abuse claim reasonable attorney fees and reasonable fees for the services of a conservator incurred by reason of the litigation of a claim brought under ORS 124.100.

[3] Even though plaintiff obtained the only substantive remedy that he sought for any of his three claims, namely, rescission, the financial abuse claim entitles a prevailing plaintiff to attorney fees. It is that supplemental remedy that the trial court denied; therefore, plaintiff's appeal is not moot.

medical examination revealed moderate to severe mental impairment.

Shortly thereafter, plaintiff needed to conduct some personal business away from home. He arranged for Elden to stay with defendant, Elden's grandniece, at her home in Salem for a few days. Plaintiff told defendant that Elden had Alzheimer's disease. Plaintiff's son left Elden with defendant on Friday, February 25. The following Monday, February 28, defendant drove Elden to various locations, where, with her assistance, he conducted a number of transactions. Defendant helped Elden obtain an Oregon DMV identification card, which listed defendant's Salem residence as Elden's address. While at the DMV office, Elden transferred the title to one of his vehicles to defendant, and he added her name to the titles of his two other vehicles. Defendant also took Elden to his bank in Lincoln City, where he added her name to his checking account, giving defendant the authority to write checks against the account and a right of survivorship in it. On the same day, defendant examined the recorded deed to certain real property that Elden owned. Defendant then purchased a form for a bargain and sale deed at a legal stationery store. When she returned home, defendant filled out the deed so that, when executed by Elden, it would grant her a co-ownership interest in that real property with a right of survivorship. Defendant also filled out a form whereby Elden would grant her a power of attorney. Later that evening, she drove Elden to the residence of a notary public, in whose presence Elden signed the deed and the power of attorney.[4]

When plaintiff picked Elden up two days later, defendant did not tell him about the property transfers or the power of attorney; however, plaintiff eventually learned of them. In May 2000, plaintiff, through an attorney, sent defendant two letters asking her to relinquish her interests in Elden's real property. Defendant did not respond. In October 2000, the Lincoln County Circuit Court appointed plaintiff as Elden's guardian and conservator. Acting in that capacity, plaintiff filed this action. Elden died in August

---

[4] At trial, plaintiff did not claim that defendant actually used the power of attorney.

2001, and plaintiff thereafter was appointed as personal representative of his estate. In his second amended complaint, plaintiff was named as personal representative.

After a bench trial, the court found that Elden had lacked the capacity to execute the transactions described above, and the court rescinded them.[5] However, the court dismissed the financial abuse claim, concluding that "there was neither a 'taking' nor an 'appropriation' " of property within the meaning of ORS 124.110(1)(a). The court also dismissed the claim for rescission based on undue influence. Plaintiff appeals, assigning error only to the dismissal of the financial abuse claim.[6] Defendant does not cross-appeal from the portion of the judgment granting rescission on the ground that Elden lacked capacity to make the transfers.

Plaintiff contends that the trial court erred in concluding that the phrase "takes or appropriates money or property of an elderly or incapacitated person," as used in ORS 124.110(1)(a), does not encompass the real property transaction here. According to plaintiff, defendant *took* an undivided one-half interest in Elden's property, and the circumstances surrounding the taking demonstrate that it was wrongful. Defendant concedes that she took property within the meaning of ORS 124.110(1)(a). However, she contends that the taking was not wrongful. Defendant asserts that Elden was not incompetent at the time of the conveyance and that, in facilitating it, she merely carried out his wishes.[7]

---

[5] Before trial, plaintiff sold one of the vehicles on which Elden had added defendant's name to the title. At plaintiff's request, defendant signed the title, releasing her interest in it. There was no evidence that she asked for or received any of the proceeds from the sale. The court's judgment rescinding the various transactions did not include that vehicle.

[6] Plaintiff limits his assignment of error to the trial court's conclusion as it relates to "obtaining a joint interest in *real* property with a right of survivorship." (Emphasis added.) Accordingly, we limit our discussion to that transaction.

[7] Defendant also argues that plaintiff has "unclean hands" and should be precluded from seeking relief because he himself had Elden sign other documents—including a power of attorney—during the time that Elden allegedly lacked capacity to execute such a document. Here, however, plaintiff acts in a fiduciary capacity, not for his personal interest. Defendant does not explain how plaintiff's actions in his personal capacity can constitute a defense in this action. We reject defendant's unclean hands argument without further discussion.

■ Preliminarily, on *de novo* review, we reject without discussion defendant's argument that the taking was not "wrongful" because Elden had the capacity to convey his property. However, that conclusion does not foreclose defendant's remaining argument that, regardless of whether Elden had the capacity to make the conveyance, her conduct was not "wrongful" within the meaning of ORS 124.110(1)(a). Moreover, although defendant has conceded that her conduct constituted a taking of property, we must independently determine the meaning of the statutory phrase that the trial court construed. In doing so, we examine the text of the statute in context and, if necessary, its legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

■ A statutory claim for financial abuse has four elements: there must be (1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful. We jointly consider the first two elements. Plaintiff contends that obtaining a joint interest in real property constitutes the "taking" of "property." As noted, defendant concedes the point. For the reasons now explained, we accept defendant's concession.

■ . ORS chapter 124 does not define "takes" or "taking." The ordinary meaning of "take" is "to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, or use of[.]" *Webster's Third New Int'l Dictionary* 2330 (unabridged ed 1993). ORS 93.180 provides, in part, that "a declaration of a right to survivorship shall create a tenancy in common in the life estate with cross-contingent remainders in the fee simple." Thus, after the transfer, Elden and defendant each held an undivided life estate in the real property with a cross-contingent remainder. Such an interest is divisible, in that it may be partitioned and sold, even though neither co-owner can force the sale of the estate in fee simple before the other dies. *See Halleck v. Halleck et al*, 216 Or 23, 40-41, 337 P2d 330 (1959). Because the conveyance transferred an undivided interest in Elden's property to defendant, and it diminished Elden's interest commensurately, defendant took Elden's property within the meaning of ORS

124.110(1)(a).[8] *See Sheppard v. Weekly*, 72 Or App 86, 92, 695 P2d 53 (1985) ("In the absence of contradictory evidence, it is presumed that co-owners enjoy equal rights to use and control the property, independently of the other owner's knowledge or consent."). The trial court erred in concluding otherwise.

It is beyond dispute that plaintiff proved the third element of the financial abuse claim. At the time of the challenged transactions, Elden was an elderly person and, as found by the trial court, he also was incapacitated.

■■ Because the trial court dismissed the financial abuse claim based on its conclusion that there was no taking of property, it did not reach the fourth element, namely, whether defendant's actions were "wrongful." That term is not defined by statute. Its ordinary meaning is "full of wrong : INJURIOUS, UNJUST, UNFAIR." *Webster's* at 2642. More specifically, it has a well-understood meaning in the law of torts with regard to interference with legal interests. *See Stull v. Hoke*, 326 Or 72, 78, 948 P2d 722 (1997) (holding that, if a statutory term has a well-defined legal meaning, then we give it that meaning). Conduct generally is "wrongful" if it is carried out in pursuit of an improper motive or by improper means. *See, e.g., Empire Fire & Marine Ins. v. Fremont Indemnity*, 90 Or App 56, 62, 750 P2d 1178 (1988) (defining "wrongful" interference with contractual relations in those terms). "Improper means" must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of. *Conklin v. Karban Rock, Inc.*, 94 Or App 593, 601, 767 P2d 444, *rev den*, 307 Or 719 (1989). Improper means, for example, include "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood." *Id.* The use of undue influence also constitutes an "improper means," in that it involves the procurement of an unfair advantage. *See Smith v. Ellison*, 171 Or App 289, 294, 15 P3d 67 (2000) (stating that "the emphasis in undue influence cases should be on the unfairness of the advantage which is reaped as a result of wrongful conduct" (internal

---

[8] Our conclusion obviates the necessity of considering whether defendant's actions also constituted an "appropriation" of property.

quotation marks omitted)). That dual meaning of the word "wrongful," focusing alternatively on the defendant's motives or the means by which property was taken, is sensible in the context of ORS 124.110(1)(a). Accordingly, we adopt it.

■ The parties adduced conflicting evidence concerning defendant's motives and the propriety of the means by which she took an interest in Elden's property. For example, defendant testified that she believed that Elden was competent, that Elden did not trust plaintiff, and that she merely was trying to help Elden carry out his wishes. Plaintiff, on the other hand, asserted that Elden did not want defendant to have his property after he died and that defendant acted with haste and secrecy in effecting the transfers because she knew that she was acting improperly. Deciding whether defendant's conduct was wrongful thus requires an assessment of the witnesses' credibility. Although we review factual issues *de novo*, we prefer to give the trial court an opportunity to make findings on that issue in the first instance. *See State ex rel SOSCF v. Burke*, 177 Or App 24, 31, 33 P3d 354 (2001) (remanding, despite *de novo* review, to the trial court for findings on unresolved factual issues). Accordingly, we remand the financial abuse claim to the trial court to determine whether defendant acted wrongfully.[9]

Judgment dismissing claim for financial abuse vacated and remanded; otherwise affirmed.

---

[9] As discussed, the trial court dismissed plaintiff's rescission claim based on undue influence. However, it is unclear whether the court decided that claim on its merits or, instead, simply did not reach it after having granted rescission based on Elden's lack of capacity. If the trial court did not reach the merits of the undue influence claim, it is free to consider on remand whether defendant exerted undue influence over Elden in deciding whether defendant wrongfully took his property for purposes of the financial abuse claim.