Submitted September 29, 2015, affirmed November 2, 2016, petition for review denied March 30, 2017 (361 Or 311)

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
ROBERT ANDREW BROWNING,
*Defendant-Appellant.*
Washington County Circuit Court
C122076CR; A155856

386 P3d 192

Peter Gartlan, Chief Defender, and Anne Fujita Munsey, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## DUNCAN, P. J.

The state charged defendant with 14 counts of first-degree criminal mistreatment based on withdrawals he made from accounts belonging to his elderly mother and mother-in-law, each of whom had signed documents giving him power of attorney over their financial affairs. Defendant, who repaid some of the money he had withdrawn from the accounts, said that the withdrawals were loans.

As relevant here, a person commits first-degree criminal mistreatment if the person, having assumed the care of an elderly person, "intentionally or knowingly" "takes" or "appropriates" the elderly person's money or property for "any use or purpose not in the due and lawful execution of the person's responsibility[.]" ORS 163.205(1)(b)(D). Anticipating that defendant would argue at trial that he did not "take" or "appropriate" money from his mother and mother-in-law, but merely "borrowed" it, the state filed a motion *in limine*, asking the trial court to hold that ORS 163.205 (1)(b)(D) applies to both temporary and permanent deprivations of property. The state argued that, unlike the theft statute, the criminal mistreatment statute does not require the state "to prove a permanent deprivation of property as being the mental state * * * of taking and appropriating." The trial court granted the motion. Thereafter, defendant entered conditional guilty pleas, reserving his right to appeal the trial court's ruling interpreting ORS 163.205(1)(b)(D).[1] On appeal, the parties renew the arguments they made in the trial court. Because, as explained below, we conclude that, for the purposes of ORS 163.205(1)(b)(D), the term "take" applies to the exercise of dominion or control over property for one's own use or the use of a third person, regardless of whether the dominion or control is intended to be temporary or permanent, we affirm.

The meaning of a statutory term is a question of law, which we review for errors of law. *State v. Serrano*, 346 Or 311, 210 P3d 892 (2009) (applying standard). When interpreting a statute, our task is "to discern the intent of the

___

[1] Defendant entered guilty pleas to Counts 1 through 9 and Counts 11 through 14; the state dismissed Count 10.

legislature." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do so, we first examine the text and context of the statute, as well as any relevant legislative history, and, if that examination does not resolve the issue, we apply maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin with the text, which is "the best evidence of the legislature's intent." *PGE*, 317 Or at 610.

First-degree criminal mistreatment is defined by ORS 163.205, which provides, in part:

"(1)   A person commits the crime of criminal mistreatment in the first degree if:

"* * * * *

"(b)   The person, in violation of a legal duty to provide care for a dependent person or elderly person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person, *intentionally or knowingly*:

"* * * * *

"(D)   *Hides* the dependent person's or elderly person's money or property or *takes* the money or property for, *or appropriates* the money or property to, *any use or purpose not in the due and lawful execution of the person's responsibility*[.]"

(Emphasis added.) Thus, to prove that a person has committed first-degree criminal mistreatment under ORS 163.205(1)(b)(D), the state must prove that the person (1) had a legal duty to provide care for an elderly or dependent person or had assumed the care or supervision of the elderly or dependent person and (2) intentionally or knowingly hid, took, or appropriated the elderly or dependent person's money or property for a use not in the due and lawful execution of the person's responsibility.

In this case, the parties dispute the meaning of "takes" and "appropriates" within ORS 163.205(1)(b)(D). Defendant contends that both terms require a permanent deprivation of property. In defendant's view, "[m]erely using [an elderly person's money or property] inappropriately (such as taking a personal loan or driving the elderly person's car

on a personal errand), without permanently depriving the elderly person of the use and value of the money or property, does not fall within the conduct prohibited by the statute." Because it is dispositive, we turn to the question of whether, for the purposes of ORS 163.205(1)(b)(D), "take" requires a permanent deprivation.

The term "take" is not defined for the purposes of ORS 163.205(1)(b)(D). "In the absence of a statutorily provided definition, we ordinarily assume that the legislature intended the words of the statute to carry their plain, natural, and ordinary meanings." *State v. Spears*, 223 Or App 675, 683, 196 P3d 1037 (2008). "Take" has many dictionary definitions, including "**4 a :** to get into one's hand or one's hold or possession by a physical act of simple transference," "**6 :** to transfer into one's own keeping : enter into or arrange for possession, ownership, or use of: * * * **b** (1) **:** to obtain or secure for use (as by lease, subscription, or contract)," "**12 :** to receive or accept whether willingly or reluctantly," "**16 a :** to remove or obtain by removing." *Webster's Third New Int'l Dictionary* 2330 (unabridged ed 2002) (boldface in original). Thus, the ordinary meaning of "take" encompasses a variety of acts involving an exercise (or acceptance) of control over something. Nothing in the ordinary meaning requires a permanent deprivation; indeed, some of the definitions reference temporary control, such as transfers for "use," as opposed to transfers of ownership or any other form of permanent control. Notably, in *Church v. Woods*, 190 Or App 112, 117-18, 77 P3d 1150 (2003), we used one of those definitions when interpreting the meaning of "take" for the purposes of ORS 124.110, which provides that a civil action for financial abuse may be brought against a person who "wrongfully takes or appropriates money or property" from an elderly or incapacitated person.[2] Specifically, we held that,

---

[2] ORS 124.110 provides, in part:

"(1) An action may be brought under ORS 124.100 for financial abuse in the following circumstances:

"(a) When a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person."

At the time we decided *Church*, the statute referred to "elderly or incapitated" persons, rather than "vulnerable" persons, as it does now. ORS 124.110

for the purposes of ORS 124.110, to "take" is "to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, *or use of*[.]" *Id.* (First brackets in original; internal quotation marks omitted; emphasis added.) Thus, the ordinary meaning of "take," which we have employed when interpreting a similar statute, indicates that the legislature intended the term "take" in ORS 163.205(1)(b)(D) to include the use of another's money or property.

The context of ORS 163.205(1)(b)(D) supports that view. A statute's context includes "related statutes" that existed at the time the statute in question was enacted, *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012); *see also PGE*, 317 Or at 611 (where the legislature uses the same term in related statutes, the court may infer that the term has the same meaning), as well as the prior construction of those statutes, *Spears*, 223 Or App at 692-93 (analyzing prior court interpretations of "take" in the kidnapping statute, ORS 163.225(1)(a)).

Here, both parties suggest that the theft statute, ORS 164.015, provides context for the criminal mistreatment statute. Defendant argues that the theft statute, which also uses the term "takes," requires an intent to permanently deprive another of property and that the legislature intended to incorporate that requirement when it subsequently enacted the criminal mistreatment statute. The state disagrees, asserting that differences between the theft statute and the criminal mistreatment statute indicate that, although theft requires an intent to permanently deprive another of property, criminal mistreatment does not. We agree with the state.

In support of his argument, defendant relies on *Spears*. In that case we analyzed the definition of theft set out at ORS 164.015, which provides, "A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person * * * [t]akes, appropriates, obtains or withholds such property from an owner thereof[.]" Based on the text, context, and legislative history of the theft statutes, we concluded

---

(1999), *amended by* Or Laws 2005, ch 386, § 3. That difference does not affect our analysis.

that, for the purposes of ORS 164.015, "take" requires "securing dominion and control over the personal property of another" and "some movement of that property." *Spears*, 223 Or App at 697. But that definition does not aid defendant in this case because nothing in it requires that the exercise of dominion and control be intended to be permanent.

To be sure, theft requires an intent to permanently deprive a person of property, but the source of that requirement is not the term "take"; instead, it is the culpable mental state requirement that applies to theft, namely, that the person acts "with intent to *deprive* another of property or to *appropriate* property to the person or to a third person[.]" ORS 164.015. Both "deprive" and "appropriate" are defined for the purposes of the theft statutes by ORS 164.005, and each definition refers to an interference with property that is either permanent or so extensive as to deprive the property owner of the major portion of the economic value or benefit of the property. Specifically, ORS 164.005(1) provides that "[a]ppropriate" means to "exercise control over property of another * * * permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property" or "dispose of the property of another for the benefit of oneself or a third person." Similarly, ORS 164.005(2) provides that "deprive" means to "withhold property of another * * * permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to that person" or "dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property." As we have observed,

> "[t]he legislature crafted the definitions of 'appropriate' and 'deprive' in ORS 164.005(1) and (2) in such a way * * * as to 'retain the traditional distinction' between larceny, which requires a thief to intend permanent or virtually permanent loss to the owner of the possession and use of property, and offenses that require the intent to obtain only temporary possession of property or to cause temporary loss to its owner."

*State v. Christine*, 193 Or App 800, 809, 93 P3d 82, *rev den*, 337 Or 476 (2004) (quoting Commentary to Criminal Law

Revision Committee Proposed Oregon Criminal Code, Final Draft and Report § 121, 130 (July 1970)).

As the state points out, although the theft statute was enacted as part of the 1971 revision of the criminal code and the criminal mistreatment provision at issue here, ORS 163.205(1)(b)(D), was not enacted until 1993, the criminal mistreatment provision does not include a requirement that a person act "with intent to deprive another of property or to appropriate property to the person or to a third person." That omission is telling; if the legislature had intended to include in ORS 163.205(1)(b)(D) a requirement that the person intend the taking to be permanent, it could have done so as it had done in the theft statute. *See State v. Pusztai*, 269 Or App 893, 898-99, 348 P3d 241 (2015) (differences between theft statute and unlawful use of a vehicle (UUV) statute indicate that the legislature did not intend the UUV statute to require an intent to permanently deprive the UUV victim of vehicle).

ORS 163.205(1)(b)(D) has a culpable mental state requirement; it is simply different from that for theft. It requires that a person intentionally or knowingly take money or property for a use other than one in the due and lawful course of the person's responsibilities. To also require that the person intend to keep the property permanently would be to improperly insert a requirement that the legislature omitted. ORS 174.010 (when interpreting a statute, courts shall "not * * * insert what has been omitted").

The legislative history of the criminal mistreatment statute supports the view that the legislature did not intend ORS 163.205(1)(b)(D) to require proof of an intent to permanently deprive another of money or property. The history shows that the legislature was concerned about the financial exploitation of elderly persons, which could take many forms. The legislators intended to craft a statute that would cover "the misappropriation of dollars under various guises." Tape Recording, House Committee on Judiciary, HB 2318, Apr 12, 1993, Tape 22, Side A (statement of Rep Bob Tiernan). They drafted (and redrafted) the statute with the goal of making it broad enough to capture exploitative acts, but not so broad that it would also capture voluntary

distributions of property by elderly persons or other persons acting in a manner consistent with a caretaking or supervisory role. *See, e.g., id.* (stating that the overall approach was to make the statute broad enough to cover conduct constituting financial abuse); *see also State v. Bevil,* 280 Or App 92, 102-04, 376 P3d 294 (2016) (describing that aspect of the legislative history).

The legislature's expressed intent for the statute to have a broad reach in order to capture financial abuse of the elderly in its various forms demonstrates that the legislature intended ORS 163.205(1)(b)(D) to apply to the exercise of dominion or control over an elderly person's money or property, without the elderly person's voluntary consent, for a purpose not in the due and lawful execution of the person's responsibility. The dominion or control may be intended to be temporary or permanent. Thus, ORS 163.205(1)(b)(D) encompasses situations where a caregiver for an elderly person takes money from the elderly person's bank account, without consent, for a purpose other than the execution of their responsibilities to the elderly person.

Affirmed.