Argued and submitted June 6, 2016; on appeal, reversed as to financial elder abuse counterclaim, otherwise affirmed, affirmed on cross-appeal July 26, 2017

### Linda SCHMIDT
### and Frank Schmidt
*Plaintiffs-Appellants,*
*Cross-Respondents,*

*v.*

### Elnora NOONKESTER,
*Defendant-Respondent,*
*Cross-Appellant.*

### Douglas County Circuit Court
### 12CV1502CC; A156066

401 P3d 266

Christopher W. Peterman argued the cause for appellants-cross-respondents. With him on the briefs was Christopher W. Peterman Attorney at Law, P.C.

Dan G. McKinney argued the cause for respondent-cross-appellant. With him on the brief was DC Law.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.*

---

* Garrett, J., *vice* Hadlock, C. J.

**GARRETT, J.**

Plaintiffs sued defendant for breach of contract, declaratory relief, and fraud. Defendant counterclaimed for financial elder abuse, ORS 124.100, ORS 124.110,[1] alleging, among other things, that plaintiffs' litigation against her was unfounded. Plaintiffs moved to dismiss and for a directed verdict on the elder abuse counterclaim but the trial court allowed the counterclaim to go to the jury, which found for defendant. The trial court then found for plaintiffs on their contract claim and awarded declaratory relief. On appeal, plaintiffs assign error to the trial court's failure to dismiss the elder abuse counterclaim, and, alternatively, to the trial court's failure to grant their motion for a directed verdict. Plaintiffs argue that defendant's counterclaim fails as a matter of law because, even assuming that unfounded litigation can serve as a predicate for an elder abuse claim, defendant failed to demonstrate any "tak[ing]" of defendant's money or property as required by ORS 124.110(1)(a). We agree with plaintiffs. Accordingly, we reverse the judgment as to defendant's counterclaim and otherwise affirm.

Defendant cross-appeals the judgment in favor of plaintiffs on the breach-of-contract and declaratory relief claims. We reject defendant's arguments without written discussion.

The facts pertinent to our resolution are not in dispute. At the relevant time, plaintiffs lived on property adjacent to a parcel owned by defendant and her son. Part of defendant's property was accessed via an easement over plaintiffs' property. Defendant was in her mid-seventies.

Plaintiffs hired defendant's son, a licensed contractor, to perform work on their home. Dissatisfied with the results of the work, they brought a construction-defect action against the son. That litigation led to negotiations that culminated in a settlement agreement whereby (1) the son would pay plaintiffs $6,000 and (2) both he and defendant would

---

[1] ORS 124.100 creates a civil cause of action for damages resulting from the financial abuse of "vulnerable person[s]," which includes persons who are 65 years of age or older. ORS 124.100(1)(b), (g). Under ORS 124.110(1)(a), an action for financial abuse may be brought "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person[.]"

release their interests in the easement over plaintiffs' property. After a conversation with her son, defendant signed the settlement agreement. However, although the son later formally released his interest in the easement, defendant refused to, claiming that she had only signed the agreement to approve it "as to form," never intending to agree to release her interest in the easement. Plaintiffs brought this action against her, alleging claims for breach of contract, declaratory relief, and, significant to this appeal, fraud.

Defendant counterclaimed for financial elder abuse under ORS 124.100. That statute provides, as relevant here, that a "vulnerable person," defined as someone who is 65 years of age or older, "who suffers injury, damage or death by reason of physical abuse or financial abuse may bring an action against any person who has caused the physical or financial abuse." The definition of "financial abuse" is set out in ORS 124.110(1):

> "An action may be brought under ORS 124.100 for financial abuse in the following circumstances:
>
> "(a) *When a person wrongfully takes or appropriates money or property of a vulnerable person*, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person."

(Emphasis added.)

Defendant's elder abuse counterclaim alleged the following wrongful conduct:

> "Plaintiffs wrongfully coerced defendant into signing the settlement agreement approving it as to form and thereafter began to seek to enforce it against the defendant and threatened to cut off defendant's only reasonable access to her property. Plaintiffs thereafter submitted documents to defendant insisting defendant sign a release of defendant's easement to her property and plaintiffs further filed the instant litigation to coerce defendant into releasing the access to her property."

Defendant also alleged that, as a result of the abuse, she incurred noneconomic damages in the amount of $10,000 for "emotional and mental distress, aggravation and annoyance," as well as attorney fees and costs.

Plaintiffs moved, unsuccessfully, under ORCP 21 A(8) for dismissal of the elder abuse counterclaim. Later, they moved for a directed verdict, arguing that defendant had failed to establish either wrongful conduct or that anything had been "taken" from her. The trial court granted plaintiffs' directed verdict motion in part, reasoning that, to the extent that defendant's counterclaim was based on "coercion" regarding the signing of the settlement agreement, any such coercion was applied by defendant's son, not by plaintiffs. But the court ruled that defendant's counterclaim could proceed on the theory that plaintiffs' *fraud* claim—which, by that time, had been dismissed on defendant's motion for summary judgment—constituted "unfounded litigation," which could satisfy the "wrongful" element of a financial elder abuse claim. The court further reasoned that defendant had demonstrated that plaintiffs' fraud claim resulted in a "taking" of defendant's money or property, explaining:

> "[T]he taking can occur when [defendant] is put on guard to defend against an allegedly unfounded litigation, and that taking is a taking of her own time, trouble, psyche, the expense that it needs to be taken to defend against that, the annoyance and inconvenience. It's taken. And that's something that's taken from her."

The jury found in favor of defendant on her elder abuse counterclaim and awarded defendant $10,000 in non-economic damages, which was trebled to $30,000 by statute. ORS 124.100(2)(b). The court then found in favor of *plaintiffs* on their breach of contract claim, and also granted plaintiffs' request for declaratory relief to enforce the *terms* of the settlement agreement. The trial court reconciled the two seemingly inconsistent decisions as follows:

> "I recognize that [the court's ruling on plaintiffs' contract and declaratory relief claims] may be said to be quite at odds with the jury's decision [on defendant's elder abuse counterclaim]. I reconcile the two by making [the] following observations: It is a common tactic for litigants, when involved in litigation, to make claims * * * to the maximum extent that they can to place the other side at risk. It's perceived, and probably accurately perceived to some extent, that by doing so and by placing people at risk that some leverage is gained as a result of doing that.

"What I believe the jury verdict stands for is the fact that in the jury's opinion the fraud claim was overreaching on the part of the [plaintiffs]."

On appeal, plaintiffs argue that they were entitled to a directed verdict or dismissal of defendant's counterclaim for a number of reasons, including that defendant failed to present any evidence of a "taking" or appropriation of her money or property by plaintiffs. As it is dispositive, we address only plaintiffs' contention that the trial court erred by denying their motion for a directed verdict. We review the denial of a motion for a directed verdict by considering the evidence, and all reasonable inferences that may be drawn from it, in the light most favorable to the nonmoving party to determine whether the moving party is entitled to a verdict as a matter of law. *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 245, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). A verdict cannot be set aside unless we can affirmatively say that there is "no evidence" from which a jury could have found the facts necessary to establish each element of the claim. *Brown v. J.C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984); *Ballard v. City of Albany*, 221 Or App 630, 639, 191 P3d 679 (2008).

As noted, an action for financial elder abuse may be brought "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person[.]" ORS 124.110(1)(a); *see also* ORS 124.100(1)(g)(A), (1)(b) ("vulnerable person" includes an elderly person, meaning a person 65 years of age or older). Accordingly, the elements of a statutory claim for financial elder abuse are (1) a taking or appropriation, (2) of money or property, (3) that belongs to an elderly person, and (4) the taking must be wrongful. *Church v. Woods*, 190 Or App 112, 117, 77 P3d 1150 (2003).

ORS chapter 124 does not define "wrongfully" or "takes." In a previous case construing ORS 124.110, however, we applied well-established meanings for both terms. In *Church*, we gave "take" its "ordinary meaning," which is "'to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, or use of[.]'" 190 Or App at 117 (quoting *Webster's Third New Int'l Dictionary* 2330 (unabridged ed 1993) (brackets in *Church*)). With respect to

the "wrongful" element, we observed that that term "has a well-understood meaning in the law of torts with regard to interference with legal interests. * * * Conduct generally is 'wrongful' if it is carried out in pursuit of an improper motive or by improper means." *Id.* at 118 (citations omitted). We noted that "improper means" must be "independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of." *Id.* We went on to explain that "improper means" could include "'violence, threats, intimidation, deceit, misrepresentation, bribery, *unfounded litigation,* defamation and disparaging false-hood.'" *Id.* (quoting *Conklin v. Karban Rock, Inc.,* 94 Or App 593, 601, 767 P2d 444, *rev den,* 307 Or 719 (1989) (emphasis added)).

As plaintiffs point out, the incidental language in *Church* suggesting that unfounded litigation can satisfy the "wrongful" element of an elder abuse claim is argu-ably *dictum* because it was not necessary to the holding of that case, and was included as an example of an indepen-dent statutory or common law "wrong." Nonetheless, even assuming that a claim for elder abuse may be based on the prosecution of unfounded litigation, and assuming that plaintiffs' fraud claim was "unfounded," we conclude that plaintiffs were entitled to judgment on defendant's counter-claim as a matter of law. That is so for the simple reason that defendant failed to present any evidence from which a jury could find that there had been a "taking" of her money or property.[2]

Defendant's argument, as we understand it, is that, when a claim for financial elder abuse is based on the pros-ecution of "unfounded litigation," the requirement that the claimant must prove a "taking" of money or property is dif-ferent than when the abuse is perpetrated by some other, wrongful means. That is so because, in defendant's view, "unfounded litigation" is, by definition, unsuccessful. Thus,

---

[2] A claim for financial elder abuse may be brought when a person wrongfully "takes *or appropriates*" money or property of an elderly person. ORS 124.110(1)(a) (emphasis added). In this case, the parties' arguments before the trial court focused on the "taking" aspect of an elder abuse claim. Moreover, on appeal, nei-ther party offers separate argument as to whether or not plaintiffs "appropri-ate[d]" defendant's money or property. We limit our analysis accordingly.

according to defendant, the only "taking" that can exist where an elder abuse claim is based on "unfounded litigation" is the time, emotional distress, and legal fees incurred in defending against that litigation. Here, defendant argues that she presented evidence of such a "taking," and the trial court found that she had met her burden, because defending against plaintiffs' fraud claim took "time, effort, attorney fees" and resulted in "physical and emotional costs." Defendant also argues that plaintiffs' lawsuit was an "arrangement to take" money or property from defendant to which plaintiffs were not entitled.

Defendant misapprehends the nature of the required "taking" for purposes of the financial elder abuse statute. Again, assuming for purposes of this appeal that "unfounded litigation" may be the predicate for an elder abuse claim, it can satisfy, at most, only the "wrongful conduct" element of such a claim. *See Church*, 190 Or App at 118 (conduct is "wrongful" if it is carried out by improper means, such as "unfounded litigation"). Contrary to defendant's position on appeal, nothing in the text or context of ORS 124.110 suggests that the requirement to prove a "taking" of money or property belonging to an elderly person changes based on the means that are used to perpetrate the abuse. Defendant must still establish a "taking," and, here, defendant fails to explain how the negative effects that she suffered as a result of plaintiffs' litigation equate to a "taking" under the definition ascribed to the term in *Church*. That is, the alleged damages incurred by defendant—the time, effort, stress, and expense incurred in defending against plaintiffs' fraud claim—do not involve a transfer of defendant's money or property into plaintiffs' "own keeping." *Church*, 190 Or App at 117. Nor can it be reasonably said that a lawsuit, even if unfounded, is "an *arrange*[*ment*] for possession, ownership, or use of" defendant's money or property. *Id.* (brackets and emphasis added). To "arrange" means to "plan," "make preparations for," or "come to an agreement, understanding, or settlement." *Webster's Third New Int'l Dictionary* 120 (unabridged ed 2002). The term simply has no application in the context of a "taking" accomplished by asserting an adversarial legal claim, the outcome of which is far from certain.

In sum, we conclude that defendant failed to present any evidence of a "taking" of her money or property, as is required for a claim for financial elder abuse under ORS 124.110. The trial court therefore erred by denying plaintiffs' motion for a directed verdict and submitting defendant's counterclaim to the jury.

On appeal, reversed as to financial elder abuse counterclaim; otherwise affirmed. Affirmed on cross-appeal.