590 January 29, 2025 No. 69

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Lesa A. JARRATT,
Personal Representative of the Estate of Imogene A. King,
*Plaintiff-Respondent,*

*v.*

CHARLENE PATTERSON,
*Defendant-Appellant.*

Curry County Circuit Court
19CV54251; A180906

Cynthia Lynnae Beaman, Judge.

Argued and submitted November 8, 2024.

Christopher L. Cauble argued the cause for appellant. Also on the briefs was Cauble & Whittington, LLP.

Janet M. Schroer argued the cause for respondent. Also on the brief were Ruth A. Casby and Hart Wagner LLP.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded as to $93,484.54 money award related to Umpqua Bank account; otherwise affirmed.

**TOOKEY, P. J.**

As the personal representative of the estate of Imogene King, a "vulnerable person" as that term is defined in ORS 124.100, plaintiff brought this action against defendant, alleging claims of financial elder abuse under ORS 124.100 and ORS 124.110, breach of fiduciary duty, and conversion. Defendant appeals from a general judgment for plaintiff on each of the claims and granting plaintiff three money awards with treble damages.[1] In three assignments of error, defendant argues that the trial court erred in determining that she was liable for financial elder abuse, finding that the vulnerable person was "incapable of making financial decisions," and ordering equitable relief and money awards. Because the trial court erred in calculating the damages associated with one financial transaction, relating to the Umpqua Bank account, we reverse and remand for recalculation of those damages.[2] We otherwise affirm.

"In reviewing a trial court's determinations following a bench trial, we review the trial court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error." *Grimstad v. Knudsen*, 283 Or App 28, 31, 386 P3d 649 (2016), *rev den*, 361 Or 350 (2017) (internal quotation marks and brackets omitted).

In her first assignment of error, defendant argues that "[t]he trial court erred in granting Plaintiff's Financial

---

[1] ORS 124.100 provides, in part:

"(2) A vulnerable person who suffers injury, damage or death by reason of physical abuse or financial abuse may bring an action against any person who has caused the physical or financial abuse or who has permitted another person to engage in physical or financial abuse. The court shall award the following to a plaintiff who prevails in an action under this section:

"(a) An amount equal to three times all economic damages, as defined in ORS 31.705 (Economic and noneconomic damages separately set forth in verdict), resulting from the physical or financial abuse, or $500, whichever amount is greater."

ORS 124.110(1)(a) provides that an action for financial abuse may be brought "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person."

[2] The three awards at issue concern the Umpqua Bank account, the Chase Bank account, and certain vehicles. Because the parties are familiar with the facts in this case, we do not recite them here.

Elder Abuse claims, finding [defendant] wrongfully took or appropriated and failed to take reasonable steps to make [King's] property available to her." She specifically challenges the trial court's determination in its first letter opinion that "[p]laintiff has met the burden of showing by a preponderance of the evidence the seven factors that are enumerated in *In Re Reddaway's Estate*, 214 Or 410, 329 P2d 886 (1958) and that [defendant's] conduct was wrongful." Defendant argues that *Reddaway* was the incorrect legal standard to apply when determining "wrongfulness" in a statutory financial elder abuse claim, and that, under the correct standard, there is insufficient evidence that defendant acted wrongfully.

> "A statutory claim for financial abuse has four elements: there must be (1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful." *Church v. Woods*, 190 Or App 112, 117, 77 P3d 1150 (2003); ORS 124.110(1)(a) (an action for financial abuse may be brought "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person"). A plaintiff may show that a taking was wrongful by showing that it was accomplished by undue influence. *Church*, 190 Or App at 118 ("The use of undue influence [ ] constitutes an 'improper means,' in that it involves the procurement of an unfair advantage.").

> In contrast, as part of a claim for equitable relief, "undue influence" may be shown by evidence that the vulnerable person and influencer were in a "confidential relationship," and that other "suspicious circumstances" were present. *Gibson v. Bankofier*, 275 Or App 257, 272, 365 P3d 568 (2015). *Reddaway* provides a nonexclusive list of "suspicious circumstances" for the court to consider in making that determination.[3] However, proving a *prima facie* case of

---

[3] The *Reddaway* factors include "whether (1) the defendant participated 'in arrangements for or in the execution of the deeds,' (2) the donor received 'independent advice,' (3) the deed was executed in 'secrecy and haste,' (4) the 'decedent's attitude towards others' changed, (5) the 'decedent's plan of disposing of her property' changed, (6) there was an '[u]natural or unjust gift,' and (7) the donor was

statutory financial elder abuse by undue influence—such as the claims at issue here—requires more than proving a claim for equitable relief, namely that the defendant actually engaged in wrongful conduct and accomplished a taking. *Gibson*, 275 Or App at 273 ("[A] plaintiff may prove that a defendant engaged in wrongful conduct that constituted undue influence. Nevertheless, ORS 124.110(1)(a) still requires some affirmative evidence that a defendant accomplished a taking or an appropriation through wrongful conduct.").[4]

The trial court explicitly noted that plaintiff had met the burden under the *Reddaway* standard to allow an inference of undue influence. But, contrary to defendant's assertion that the trial court relied solely upon the burden for equitable relief set forth in *Reddaway*, the court also determined that defendant "acted for her own benefit by retaining and transferring the assets and violated her fiduciary duty." Therefore, the trial court not only determined that plaintiff had sufficiently proven the factors provided by *Reddaway* to allow an inference of undue influence, but it also determined that defendant acted wrongfully and accomplished a taking as required for a statutory financial elder abuse claim. The trial court's determination that defendant exerted undue influence upon the vulnerable person in the transactions at issue is supported by evidence in the record, and it applied the correct legal standard in assessing whether defendant had engaged in statutory financial elder abuse. Accordingly, the trial court did not err as argued by defendant.

---

susceptible to influence." *Gibson*, 275 Or App at 272 (citing *Penn v. Barrett*, 273 Or 471, 476-79, 541 P2d 1282 (1975), providing *Reddaway* factors).

[4] Defendant seemingly argues that her actions regarding the Umpqua Bank account could not have constituted a "taking" because she did not retain the property. However, one can accomplish a "taking" under ORS 124.110(1) (a) by "arrang[ing] for possession [or] ownership" of a vulnerable person's property. *Church*, 190 Or App at 117. Defendant accomplished a taking under ORS 124.110(1)(a) by obtaining joint ownership over the property in the manner that she did, regardless of whether she retained the property.

We reject defendant's arguments that the trial court erred in finding that she engaged in financial elder abuse with regard to the Chase Bank account and vehicles for the same reason. King funded the Chase Bank account, at least in part, and the vehicles' titles were in her name. The trial court did not err when it determined that by becoming joint owner of that property, defendant accomplished a "taking" under ORS 124.110(1)(a).

Defendant next argues that the trial court incorrectly found her "liable under ORS 124.100(2)(a) and ORS 124.110 in the $93,484.54 Money Judgment for wrongful retention of funds from [King's] Umpqua account." The trial court determined that defendant "wrongfully had [herself] named as a co-owner of an account of [King] at Umpqua Bank," and she "caused economic damages to [King] in the amount of $46,742.27 by, despite demands, failing to take steps to make Umpqua account funds of [King] available to [her] in a timely manner." The trial court granted plaintiff treble damages of the amount in the account at the time it was frozen, totaling $140,226.81, with a credit back of $46,742.27, because plaintiff eventually regained the funds after filing litigation, for a total of $93,484.54. [5]

Defendant argues that the trial court erred in assessing treble damages, because "[n]o monetary losses were alleged or proven" by plaintiff and "[t]he statute requires economic damages in order to apply treble damages." Plaintiff argues that defendant failed to preserve her argument. In this context, although raised belatedly, the trial court had a fair opportunity to consider defendant's argument regarding its calculation of damages for the Umpqua Bank account, and we will therefore address it. *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009) ("Ultimately, the preservation rule is a practical one, and close calls *** inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served.").

ORS 124.100(2)(a) provides that a plaintiff who prevails in a financial elder abuse action is entitled to: "An amount equal to three times all economic damages, as defined in ORS 31.705 (Economic and noneconomic damages separately set forth in verdict), resulting from the physical or financial abuse, or $500, whichever amount is greater." ORS 31.705(2)(a), in turn, defines "economic damages" as "objectively verifiable monetary losses including but not limited to

---

[5] To the extent that defendant argues that the trial court erred in awarding treble damages based upon the $22,000 that she removed from the Chase Bank account and the value of the three vehicles, she does not provide any record citations to support that assertion. Our review of the record does not reveal evidence that plaintiff regained those funds or those vehicles.

*** reasonable and necessarily incurred costs due to loss of use of property[.]"[6]

At trial, plaintiff testified that she was concerned about being unable to pay for necessary and expensive care while the funds in the Umpqua Bank account were frozen, but that she did not actually run out of funds. She also testified that once the funds were unfrozen, she regained the $46,742.27 in full. The trial court's award was based on plaintiff's inability to access the funds for a period of time: her loss of use of the property. As noted, "economic damages" in ORS 31.705(2)(a) include "objectively verifiable monetary losses" of "reasonable and necessarily incurred costs *due to* loss of use of property." (Emphasis added.) The definition specifically includes costs *due to* a plaintiff's loss of use, but it does not include the value of the property for which use was lost (except to the extent the property must be replaced). Here, although plaintiff could not access the $46,742.27 principal for a period of time, she regained the funds in full. Further, by crediting back the full amount of the regained funds, the trial court acknowledged that plaintiff did not suffer a monetary loss in that amount. Given the plain and unambiguous text of ORS 31.705(2)(a), "economic damages" would be costs incurred due to the inaccessibility of the funds, not the full principal amount in the account that plaintiff regained.

Plaintiff had the burden to prove damages, and, under ORS 31.705, she did not do so with regard to the $93,484.54.[7] Accordingly, we reverse and remand the

---

[6] ORS 31.705(2)(a) provides:

"'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

[7] On appeal, plaintiff cites *State v. Browning*, 282 Or App 1, 386 P3d 192 (2016), *rev den*, 361 Or 311 (2017), for the proposition that permanent deprivation of property is not necessary for a finding of damages.  That is not what *Browning* establishes.  *Browning* concerns what a plaintiff must prove in order to establish liability--whether to "take" or "appropriate" an elder's funds requires permanent

$93,484.54 money award for further proceedings regarding damages associated with the Umpqua Bank account.

In her second assignment of error, defendant argues that "[t]he trial court erred in finding [that King] was incapable of making financial decisions." Although there may be evidence in the record that King was capable of making financial decisions, there is also evidence that she was not, including testimony from two medical professionals about King's mental decline, along with testimony from plaintiff and King's brother. Thus, the trial court's determination was supported by evidence in the record and, given our standard of review, we conclude that the trial court did not err.

Finally, in her third assignment of error, defendant argues that "[t]he trial court erred in finding Defendant breached her fiduciary duty as trustee and further erred in imposing a constructive trust" over a trust under which King was a beneficiary. Defendant asks that we reverse her removal as trustee, the imposition of the constructive trust, and the award of attorney fees to plaintiff. Plaintiff argues that we should not reach this assignment of error because it is moot.

We agree that defendant's third assignment of error is moot: The trial in this civil case was held jointly with a probate matter, although the trial court entered separate judgments. The limited judgment in the probate case granted most of the same relief that defendant challenges on appeal, including defendant's removal as trustee and the imposition of a constructive trust.[8] Defendant appealed the limited judgment in the probate case, but that appeal was dismissed for lack of jurisdiction.

_____

deprivation--not what a plaintiff must prove in order to establish recoverable economic damages.

[8] Defendant argues that the limited judgment in the probate case was not an appealable final determination, because the trial court did not find that there was "no just reason for delay" as required by ORCP 67(B). However, under ORS 111.275(2), relating to limited judgments in probate proceedings, "[t]he judgment document need not reflect the court's determination that there is no just reason for delay." Defendant further argues that because the limited judgment requires a retracing of the trust to determine whether she acquired any other yet undiscovered and improper interest in other trust assets, it was not a final appealable judgment. However, defendant does not provide any support for that assertion.

Here, even were we to vacate the trial court's removal of defendant as trustee and its imposition of a constructive trust, it would have no practical effect on the parties, because the decision in the probate case provides the same relief on those points. *Eastern Oregon Mining Association v. DEQ*, 360 Or 10, 15, 376 P3d 288 (2016) (noting that cases "in which a court's decision no longer will have a practical effect on or concerning the rights of the parties will be dismissed as moot" (brackets and internal quotation marks omitted)).[9] Therefore, we do not reach defendant's third assignment of error.

In sum, the trial court did not err in determining that defendant was liable for financial elder abuse, and defendant's challenge to the equitable relief granted in the judgment is moot. However, the trial court did err in its calculation of damages regarding the Umpqua Bank account.

Reversed and remanded as to $93,484.54 money award related to Umpqua Bank account; otherwise affirmed.

---

[9] Defendant briefly notes that she challenges the attorney fees imposed in this case, but she has not developed an argument as to why we should reverse those fees or explained whether the fees in this case are different or separate from the fees in the probate case such that the relief would be different. *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be" or "to make or develop a party's argument when that party has not endeavored to do so itself.").