Submitted on record and briefs March 4, reversed October 19, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## CAREN CORNELL ROBISON,
*Appellant.*

### 0309-52392; A123659

120 P3d 1285

Caren Robison filed the brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Linda Wicks, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for criminal obstruction as a nuisance, a misdemeanor under the Portland City Code. PCC 14A.50.030 (2003). She assigns error to the denial of her motion for a judgment of acquittal based on the unconstitutionality of the ordinance. She also assigns error to the denial of a motion to require the state to prove its case beyond a reasonable doubt. The state "takes no position" on the constitutionality of the ordinance, but argues that, if it is constitutional, the trial court did not err in requiring the state to prove the violation by a mere preponderance of evidence. We conclude that defendant is correct that the ordinance is unconstitutional and that the trial court erred in denying her motion for a judgment of acquittal. We therefore do not need to address defendant's second assignment of error.

The relevant facts are undisputed. A Portland police officer found defendant and a friend seated on a sidewalk eating lunch. They were seated in an area that the officer referred to as a "through pedestrian zone." Defendant's and her friend's presence required other pedestrians to walk around them to get past. The officer asked defendant and her friend to move at least twice. When they did not move, the officer told them that he would have to arrest them for obstructing the sidewalk. Defendant replied that she wanted to be arrested because she thought that the ordinance that prohibited obstruction of the sidewalk was unlawful. The officer arrested defendant.

Defendant was cited for criminal obstruction as a nuisance under PCC 14A.50.030 (2003), which provides, in part:

"**A.** Unless specifically authorized by ordinance, it is unlawful for any person to obstruct any street or sidewalk, or any part thereof, or to place or cause to be placed, or permit to remain thereon, anything that obstructs or interferes with the normal flow of pedestrian or vehicular traffic, or that is in violation of parking lane, zone or meter regulations for motor vehicles. Such an obstruction hereby is declared to be a public nuisance. * * *

"**B.** The provisions of this Section do not apply to merchandise in course of receipt or delivery, unless that merchandise is permitted to remain upon a street or sidewalk for a period longer than 2 hours."

(Boldface in original.) Before trial, the district attorney filed an information charging defendant with obstruction as a nuisance, but elected to proceed on the charge as a violation only. ORS 161.566. At the close of the evidence, defendant moved for a judgment of acquittal on the ground that PCC 14A.50.030 (2003) is unconstitutionally overbroad and vague and is preempted by state statute. The trial court denied the motion, found defendant guilty, and imposed a fine of $175.

On appeal, defendant renews her arguments concerning the unconstitutionality of PCC 14A.50.030 (2003). As we have noted, the state takes no position on defendant's arguments. The City of Portland declined the opportunity to brief the issue.

Meanwhile, while this appeal was pending, in *State v. Kurylowicz* (Mult Co Cir Ct No 03-07-50223), Judge Litzenberger of the Multnomah County Circuit Court concluded that PCC 14A.50.030 (2003) is indeed unconstitutional. Judge Litzenberger concluded that the ordinance is unconstitutionally overbroad and vague. On December 15, 2004, the city amended the ordinance.

Before addressing the merits of defendant's argument, we pause to consider two preliminary issues.

First, there is the question of mootness. The ordinance that defendant was convicted of violating apparently has been amended. Nevertheless, defendant was convicted under it, and there are direct consequences that flow from that conviction—among other things, the $175 fine. The appeal is not moot.

Second, there is the question whether a motion for a judgment of acquittal is the proper vehicle for testing the constitutionality of an ordinance. In *State v. Maxwell*, 165 Or App 467, 472-73, 998 P2d 680 (2000), we concluded that a defendant could challenge the constitutionality of a statute on vagueness grounds by way of a motion for a judgment of acquittal. We proceed to the merits.

Defendant asserts that PCC 14A.50.030 (2003) is unconstitutional on three grounds. First, she argues that it is preempted by state law regulating the same conduct. Second, she argues that it is overbroad. Third, she argues that it is unconstitutionally vague. We begin with her assertion that the ordinance is preempted by state law, because it is dispositive.

■ Article XI, section 2, of the Oregon Constitution provides that cities and towns of Oregon have the authority generally to enact local ordinances "subject to the Constitution and criminal laws of the State of Oregon." In *City of Portland v. Dollarhide*, 300 Or 490, 501, 714 P2d 220 (1986), the Supreme Court explained that the foregoing limitation prohibits local governments from enacting ordinances that "conflict" with state criminal laws. A local ordinance is said to "conflict" with state criminal law if it prohibits conduct that the state statute permits or permits conduct that the state statute prohibits. *Id.* at 502.

Whether a state statute permits or prohibits conduct is a question of legislative intent. *City of Portland v. Jackson*, 316 Or 143, 147-48, 850 P2d 1093 (1993). That preemptive intent may be revealed in one of three ways, that is, by (1) legislation expressly occupying the field of regulation, prohibiting local governments from enacting ordinances permitting what has been prohibited; (2) legislation expressly permitting conduct, thus implicitly barring local governments from criminalizing the same conduct; or (3) legislation "otherwise manifest[ing the legislature's] intent to permit specified conduct." *Id.*

Whether the legislature has "otherwise manifest[ed]" such intent may be inferred from the phrasing of the statute or derived from an examination of the enactment history of the state law. *Id.* Thus, for example, in *City of Portland v. Lodi*, 308 Or 468, 474, 782 P2d 415 (1989), the court concluded that a local ordinance that prohibited carrying a concealed pocketknife was preempted by state law that, legislative history indicated, had been amended to remove reference to concealed knives other than switchblades.

■ With those principles in mind, we turn to the local and state laws at issue in this case. As we have noted,

PCC 14A.50.030 (2003) broadly prohibits any person from obstructing "any street or sidewalk, or any part thereof." No particular mental state is required. It effectively creates a strict liability offense.

ORS 166.025(1)(d) creates the crime of disorderly conduct. It defines the elements of that offense as follows:

> "(1)  A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, the person:
>
> "* * * * *
>
> "(d)  Obstructs vehicular or pedestrian traffic on a public way[.]"

Like the city ordinance, the statute prohibits any person from obstructing traffic in a public way. Unlike the city ordinance, however, the state statute does so only if the person engaging in the conduct does so with a specified mental state. It does not create a strict liability offense.

The text thus yields an inference that the legislature intended to permit conduct obstructing vehicular or pedestrian traffic on a public way if the person engaging in it does so without the requisite intent. But we cannot say that the text speaks conclusively in that regard. We therefore turn to the legislative history of ORS 166.025(1)(d).

What is now ORS 166.025 was adopted in 1971 as section 220 of Senate Bill 40, following several years of study by the Criminal Law Revision Commission. Or Laws 1971, ch 743, § 220. Examination of the testimony on the bill that the commission proposed to the legislature, as well as the text of the commission's written report to the legislature, reveals that, in drafting what is now ORS 166.025, the commission made a conscious choice to include a requirement that the prohibited conduct be accompanied by a particular mental state; conduct not accompanied by that intent was regarded as constitutionally protected.

In testimony to the Senate Criminal Law and Procedure Committee, the project director of the Criminal Law Revision Commission explained the inherent tension

that the commission saw between regulating disorderly conduct and safeguarding constitutionally protected freedoms of expression:

"Throughout the Criminal Code, the Commission was constantly faced with a balancing situation * * * balancing the need of the public, the right of the public to be protected against criminal activity, [and] against the right of the individual to be protected from unwarranted infringements upon personal liberties. * * * Nowhere under the Proposed Criminal Code was the Commission more acutely aware of its responsibilities in the balancing process than in [the Articles related to disorderly conduct.] * * *

"* * * [W]e have made our best effort to come up with a reasonable approach which hopefully will * * * provide law enforcement with the kinds of criminal law tools it needs to do its job to protect society and at the same time protect the * * * individual constitutional rights of freedom and liberty the First Amendment carries."

Tape Recording, Senate Criminal Law and Procedure Committee, SB 40, Mar 16, 1971, Tape 5, Side 1 (statement of Donald L. Paillette). To ensure that the disorderly conduct statute did not infringe on those constitutional guarantees, the director explained, the commission incorporated a requirement that the prohibited conduct be accompanied by a particular mental state: "Before specified conduct may be viewed as 'disorderly' under [the proposed section], the actor must intend to cause, or recklessly create a risk of, public inconvenience, annoyance or alarm. *The intent is thereby to avoid a strict liability type of offense." Id.* (emphasis added).

After approval by the Senate, the bill was referred to the House Judiciary Committee, where the synopsis describes the effect of section 220, with similar attention to the importance of the mental state of the actor as a means of avoiding infringing on constitutionally protected rights of freedom of expression:

"[The proposed statute] defines disorderly conduct in terms of activity causing a risk of public annoyance or alarm. It excludes activities which are not likely to disturb public order. *In focusing primarily on the intent of the actor—not just on his conduct—the section gives careful recognition to the protection of fundamental First Amendment freedoms."*

Minutes, House Committee on Judiciary, Apr 26, 1971 (attached supplement) (emphasis added).

The commentary to the criminal code revisions likewise explains that, "[b]efore specified conduct may be viewed as 'disorderly,' the actor must intend to cause, or recklessly create a risk of, public inconvenience, annoyance or alarm. *A strict liability offense is thereby avoided.*" Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 220, 214 (July 1970) (emphasis added). With respect to the precise provision that is at issue in this case, ORS 166.025(1)(d), the commentary notes that the proposed provision "covers the intentional obstruction of vehicular or pedestrian traffic. *It is not intended to prohibit persons gathering to hear a speech or otherwise communicate.*" *Id.* (emphasis added).

The legislative history thus makes clear the legislature's intention to preserve from criminal liability conduct that obstructs vehicular or pedestrian traffic in the absence of proof that the actor either intended to create public inconveniences, annoyance, or alarm, or recklessly created a risk of doing so. The legislature consciously avoided creating a strict liability offense out of concern for constitutionally protected rights of freedom of expression. PCC 14A.50.030 (2003), as we have noted, creates just such a strict liability offense. The ordinance prohibits precisely what the legislature intended to permit when it enacted ORS 166.025. Consequently, the ordinance conflicts with state law and is preempted. Because we conclude that the ordinance is preempted by state law, we need not address whether it also is unconstitutionally overbroad or vague.

Reversed.