HADLOCK, J.
*320 Plaintiff City of Corvallis appeals a trial court order affirming a municipal court order allowing defendant's demurrer and declaring plaintiff's "hosting" ordinance unconstitutional. Plaintiff assigns error to the trial court's determination that state law preempts the local ordinance. We affirm.
Because this case comes to us on a demurrer, we need not recite the facts in detail. State v. Illig-Renn , 341 Or. 228, 230 n. 2, 142 P.3d 62 (2006). Plaintiff cited defendant for violating, along with another ordinance, Corvallis Municipal Code (CMC) 5.03.040.010.10(1), which provides that "[n]o person shall permit, allow or host a juvenile party at his or her place of residence or premises under the person's control while alcoholic liquor is consumed or possessed by any minor." CMC 5.03.040.010.01(3) defines "juvenile party" as "[a] social gathering attended by one or more persons under the age of twenty-one (21)." The ordinance states expressly that violation of its terms "is intended to be a strict liability crime," that "proof of a mental state" is not required, and that violation of the ordinance is a Class A misdemeanor. CMC 5.03.040.010.10(3) and (4).
Defendant demurred, arguing, in part, that CMC 5.03.040.010.10 is unconstitutional because ORS 471.410(3), part of the Oregon Liquor Control Act, preempts it. That statutory provision, which we discuss in more detail later, generally prohibits a person who is present and in control of private property from knowingly allowing a minor who is not the person's own child or ward to consume alcoholic liquor on the property. The first time that a person violates ORS 471.410(3), that person has committed a Class A violation; each subsequent violation "is a specific fine violation" with a presumptive fine of $1,000. ORS 471.410(10).
The municipal court allowed defendant's demurrer and declared the ordinance invalid. Plaintiff appealed to the circuit court, arguing that the ordinance is a valid exercise of its home rule authority not preempted by state law. The trial court affirmed the municipal *907 court's order. On appeal, plaintiff assigns error to the trial court's order. We review *321 the trial court's ruling for errors of law. State v. Walsh , 288 Or. App. 331, 332, 406 P.3d 152 (2017).
Oregon grants municipalities home rule authority in Article XI, section 2, of the Oregon Constitution.[1] A party's argument that a city exceeded its home rule authority by enacting an ordinance can implicate two questions: first, whether the ordinance is authorized by the city's charter or a state statute and second, if so, "whether [the ordinance] contravenes state or federal law." City of La Grande v. PERB , 281 Or. 137, 142, 576 P.2d 1204, aff'd on reh'g , 284 Or. 173, 586 P.2d 765 (1978). In this case, the parties focus on the second question. Defendant contends that plaintiff's ordinance contravenes, or conflicts with, state law; plaintiff contends that it does not.
The test for whether state law conflicts with a local ordinance is "whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive." Id. at 148, 576 P.2d 1204. "In the area of civil or administrative ordinances regulating local conditions, it is reasonable to assume that the legislature did not mean to displace local ordinances, unless that intention is apparent." City of Portland v. Dollarhide , 300 Or. 490, 501, 714 P.2d 220 (1986). But Oregon courts apply a different test for ordinances that purport to create crimes. Recognizing that Article XI, section 2, subjects home rule provisions to "the Constitution and criminal laws of the State of Oregon," the Dollarhide court was "left * * * with the inescapable conclusion that the voters who adopted Article XI, section 2 [,] envisioned a stricter limitation on the lawmaking power of cities in respect of criminal laws than with regard to civil or regulatory measures" and reversed the assumption that the legislature did not intend to displace local ordinances unless the intent is apparent. Id. at 497, 501, 714 P.2d 220 ("The analysis of compatibility begins * * * with the assumption that state *322 criminal law displaces conflicting local ordinances which prohibit and punish the same conduct, absent an apparent legislative intent to the contrary." (Emphasis in original.) ).
We begin our analysis by considering which of the Dollarhide tests-the civil/regulatory or the criminal-applies in this context. Plaintiff argues that the civil/ regulatory analysis applies, as ORS 471.410(3) is not a criminal law, both because it falls outside of the criminal code and because the Liquor Control Act's primary purpose is regulatory. Defendant counters that ORS 471.410(3) creates a crime, as evidenced by the criminal nature of subsections (1) and (2) of the same statute,[2] the fact that the state is a party, and that ORS 131.005(6) includes violations in its definition of "criminal action."
The parties' arguments, focused as they are on the statutory provision, overlook part of the analysis. To determine whether the regulatory or the criminal analysis applies, we must consider both the nature of the statutory provision and the nature of the ordinance that the statute arguably preempts. After all, if the voters intended to strictly limit the ability of municipalities to adopt criminal ordinances even in contexts in which the state legislature also believed that criminalizing certain types of conduct was appropriate, the voters must also have intended to strictly limit municipalities' authority to criminalize behavior that the state legislature has specifically decided not to criminalize. That is, a criminal municipal ordinance *908 can conflict with "the criminal laws of the State of Oregon" for purposes of Article XI, section 2, if it criminalizes behavior that the legislature has chosen should not be subject to criminal sanction, whether that legislative choice is itself reflected in a criminal statute or in a different statutory provision. Cf. City of Portland v. Jackson , 316 Or. 143, 149, 850 P.2d 1093 (1993) ("When a local criminal ordinance prohibits conduct, unless the legislature *323 has permitted that same conduct, either expressly or under circumstances in which the legislative intent to permit that conduct is otherwise apparent, the ordinance is not in conflict with state criminal law * * *."); State v. Tyler , 168 Or. App. 600, 604, 7 P.3d 624 (2000) ("the test for whether a state law preempts a local civil or criminal ordinance is whether the local rule is incompatible with the legislative policy"; "because of the constitutional provision the assumption is that the legislature did intend to displace a criminal ordinance" (emphasis in original) ).[3] Accordingly, we look to both the city ordinance and the state statute to determine which of the Dollarhide tests to apply.
Although ORS 471.410(3) defines a noncriminal violation, it is part of a statute that creates misdemeanor crimes. ORS 471.410(1), (2). Thus, although subsection (3) itself does not create a crime, it is part of a statute that reflects the legislature's intention to criminalize certain conduct and to not criminalize other conduct. Moreover, plaintiff's ordinance expressly provides that a violation of its terms constitutes a Class A misdemeanor, with each conviction carrying a mandatory sentence that, upon a third conviction, includes imprisonment.[4] CMC 5.03.040.010.10(4). Consequently, we apply the criminal law analysis. Cf. Dollarhide , 300 Or. at 503, 714 P.2d 220 ("As long as a city ordinance employs civil or administrative procedures and sanctions lacking punitive significance, * * * the validity of the ordinance must meet only the [civil regulatory test] rather than the more stringent constraints *324 of the phrase in Article XI, section 2, that expresses the dominance of state criminal laws over the creation and punishment of local criminal offenses.").
An ordinance that criminalizes conduct conflicts with a state statute if it "either prohibits conduct that the statute permits[ ] or permits conduct that the statute prohibits." State v. Krueger , 208 Or. App. 166, 169, 144 P.3d 1007 (2006). Defendant contends that the ordinance prohibits conduct that ORS 471.410 permits. To determine whether that is so, we examine both the ordinance and the statute with which it is claimed to conflict. Jackson , 316 Or. at 151, 850 P.2d 1093. Next, "we determine what conduct the ordinance prohibits." Id. Finally, we determine whether the statute permits that conduct. Id. A statute permits conduct if the legislature (1) expressly precludes local legislation on a subject ("occupies the field"), (2) expressly permits specified conduct, or (3) "otherwise manifest[s] its intent to permit specified conduct ." Id. at 147-48, 850 P.2d 1093 (emphasis in original). If the statute permits conduct that the ordinance prohibits, the laws conflict and the statute displaces the ordinance. Id. at 151, 850 P.2d 1093.
We begin by examining the ordinance and the statute. Defendant was charged with hosting a party for minors in violation of CMC 5.03.040.010.10(1), which, as set out *909 above, provides that "[n]o person shall permit, allow or host a juvenile party at his or her place of residence or premises under the person's control while alcoholic liquor is consumed or possessed by any minor." CMC 5.03.040.010.01(3) defines "juvenile party" as "[a] social gathering attended by one or more persons under the age of twenty-one (21)." CMC 5.03.040.010.10(2) provides an affirmative defense in the event that "the alcoholic liquor is provided by the minor's parent or guardian * * *." The ordinance does not include any mental state requirement; rather, it expressly creates a "strict liability" crime. CMC 5.03.040.010.10(3). Thus, the ordinance prohibits a person from permitting, allowing, or hosting a social gathering attended by one or more persons under 21 years of age at the person's "place of residence or premises under the person's control while alcoholic liquor is consumed or possessed by any minor," regardless of whether the person does so knowingly or with any other culpable *325 mental state, unless the alcohol is provided by the minor's parent or guardian.
As noted, defendant argues that the ordinance conflicts with ORS 471.410(3) of Oregon's Liquor Control Act. ORS 471.410(3) provides:
"(a) A person who exercises control over private real property may not knowingly allow any other person under the age of 21 years who is not a child or minor ward of the person to consume alcoholic liquor on the property, or allow any other person under the age of 21 years who is not a child or minor ward of the person to remain on the property if the person under the age of 21 years consumes alcoholic liquor on the property.
"(b) This subsection:
"(A) Applies only to a person who is present and in control of the location at the time the consumption occurs;
"(B) Does not apply to the owner of rental property, or the agent of an owner of rental property, unless the consumption occurs in the individual unit in which the owner or agent resides; and
"(C) Does not apply to a person who exercises control over a private residence if the liquor consumed by the person under the age of 21 years is supplied only by an accompanying parent or guardian."
If the statute permits conduct that the ordinance prohibits in any of the three ways Jackson identified, then the statute displaces the ordinance. We first consider whether the Liquor Control Act occupies the field of liquor control, precluding local legislation on that topic. Jackson , 316 Or. at 147, 850 P.2d 1093. It does not. As we have previously explained, because the Liquor Control Act's preemption statute, ORS 471.045, "provides only that inconsistent local ordinances are preempted by the Liquor Control Act, it is clear that the legislature did not intend to retain exclusive regulatory power in the field of liquor control." City of Portland v. Sunseri , 66 Or. App. 261, 265, 673 P.2d 1369 (1983). Further, " ORS 167.840(3) specifically recognizes the power of cities to enact ordinances in this area that are not inconsistent with state law." Id.
*326 Second, we consider whether the statute expressly permits conduct that the ordinance prohibits. Jackson , 316 Or. at 148, 850 P.2d 1093. It does not. ORS 471.410(3), like many statutes, is written primarily in terms of prohibited conduct, and while ORS 471.410(4) expressly permits providing sacramental wine "provided as part of a religious rite or service," CMC 5.03.040.010.03(3) includes an analogous exception to the conduct that the ordinance criminalizes.
Third, we consider whether the legislature has otherwise manifested its intention to permit specific conduct that the ordinance criminalizes. Jackson , 316 Or at 148, 850 P.2d 1093. To answer that question, we look to both "the phrasing of the statute" and "the enactment history of the state law." State v. Robison , 202 Or. App. 237, 241, 120 P.3d 1285 (2005).
In arguing that ORS 471.410(3) does not preempt its "hosting" ordinance, plaintiff contends that the legislature did not intend the statute to regulate the same "juvenile party" conduct that plaintiff's ordinance addresses; rather, plaintiff suggests that the two laws address different subjects entirely. To assess that argument, we start by considering the phrasing of ORS 471.410(3). As *910 always when determining the meaning of a statutory provision, we consider subsection (3) in its context-here, the entirety of the statute.
The first three subsections of ORS 471.410 prohibit three types of conduct. Subsection (1) prohibits selling, giving, or otherwise making available any alcoholic liquor to a visibly intoxicated person. Using similar terminology, subsection (2) prohibits making alcohol available to a person under 21 years old, unless the person providing the alcohol is the minor's parent or guardian and the activity takes place in certain specified circumstances. Subsection (3)-the provision at issue here-prohibits a person "who exercises control over private real property" from knowingly allowing a person under the age of 21 to consume alcohol on the property (unless the minor is the child or ward of the person who controls the property). Thus, ORS 471.410(2) and (3) have different objectives. Subsection (2) is concerned with giving alcohol to minors, while subsection (3) is aimed at preventing people who own or otherwise control real property *327 from knowingly allowing juveniles to drink alcohol at that location -e.g. , the location of a party.
Legislative history confirms that ORS 471.410(3) was meant to target the locations at which juveniles might consume alcohol. Representative Ken Strobeck sponsored the 1995 house bill that added subsection (3) to the statute. House Bill (H.B.) 2582 (1995). At the first committee hearing on the bill, Strobeck explained that the bill was designed as a means to hold people "in control of the premises" accountable for parties involving underage drinking-specifically those parties thrown by teenagers when their parents are away. Tape Recording, House General Government and Regulatory Reform, Regulatory Reform Subcommittee, H.B. 2582, Apr. 3, 1995, Tape 23, Side A (statement of Rep. Ken Strobeck). In other words, the statute was enacted to regulate juvenile parties. Representative Strobeck explained to various legislative committees (the House General Government and Regulatory Reform, Regulatory Reform Subcommittee, the House General Government and Regulatory Reform Committee, and the Senate Business and Consumer Affairs Committee) that the bill arose from conversations with Beaverton police about their effective use of a local ordinance to combat risks associated with teen drinking. Id. ; Tape Recording, House General Government and Regulatory Reform, Full Committee, H.B. 2582, Apr. 19, 1995, Tape 99, Side B (statement of Rep. Ken Strobeck); Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 103, Side A (statement of Rep. Ken Strobeck). A Beaverton police officer explained that it was important to create a statewide law to avoid pushing parties out of town and into areas that had no similar prohibition, which would create a higher risk of fatal accidents. Tape Recording, House General Government and Regulatory Reform, Regulatory Reform Subcommittee, H.B. 2582, Apr. 3, 1995, Tape 23, Side A (statement of Officer Dennis Marley). Given that legislative history, Plaintiff's contention that the statute does not address juvenile parties at all lacks merit.
We turn to considering, more broadly, whether the legislature has manifested an intention to permit conduct that the ordinance criminalizes. "In theory, what the *328 legislature 'permits' can range from express permissive terms to total inattention and indifference to a subject." City of Portland v. Lodi , 308 Or. 468, 474, 782 P.2d 415 (1989). "The search is not for particular words but for a political decision, for what the state's lawmakers either did or considered and chose not to do." Id . Thus, although we cannot simply assume that, by its silence, the legislature meant to permit all conduct that it did not expressly prohibit, Jackson , 316 Or. at 149, 850 P.2d 1093, we must determine what the legislature did intend. That is, we must determine whether the legislature's decision not to prohibit particular conduct reflects something more like a conscious decision to allow that conduct (even if the legislature did not consider it desirable) or, rather, little more than the legislature's indifference to the subject.
Here, the legislature was not indifferent to the issue of whether a culpable mental state should be required, but consciously decided to require a knowing mental state. Again, the *911 ordinance, by its terms, creates a strict liability crime when a person allows a "juvenile party" on his or her property, while ORS 471.410(3) prohibits allowing juveniles to consume alcohol on private property only when the person who controls the property knowingly allows that to happen. The legislature's choice to prohibit the conduct only when the person controlling the property acts knowingly "yields an inference that the legislature intended to permit [that] conduct * * * if the person engaging in it does so without the requisite intent." Robison , 202 Or. App. at 242, 120 P.3d 1285 (considering difference between statute criminalizing disorderly conduct, which includes a specified mental state, with city ordinance that created a strict liability offense for the same kind of behavior).
The legislative history is again helpful in assessing the significance of that difference between the statute and the ordinance. As introduced, the bill that added subsection (3) to ORS 471.410 prohibited people who control real property from (a) allowing underage drinking on the property and (b) allowing a person under age 21 to remain on the property if the person controlling the property "knows or should know that the person under the age of 21 years will consume alcoholic liquor on the property." H.B. 2582 (1995), introduced. Subsequent legislative discussion resulted in *329 three significant amendments. First, the word "knowingly" was added, so that the statute applies only to people who "knowingly allow" underage drinking on their property. H.B. 2582 (1995), house amendments (Apr. 25, 1995); ORS 471.410(3). Second, a provision was added clarifying that the subsection's prohibitions apply "only to a person who is present and in control of the location at the time the consumption occurs." H.B. 2582 (1995), Senate amendments to A-Engrossed (May 25, 1995); ORS 471.410(3). Third, the legislature deleted the provision that would have held a property owner responsible for underage drinking on the property if the owner should have known that would happen. Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 103, Side A (statement of Sen. Joan Dukes); Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 106, Side A; H.B. 2582 (1995), Senate amendments to A-Engrossed (May 25, 1995).
Plaintiff asserts that the statutory mental state requirements were added to protect owners of large tracts of private property in the event that those properties were used without their knowledge as the locations for juvenile parties-a concern different from plaintiff's goal of prohibiting juvenile parties within city limits. True, specific statements in the legislative record reflect that protecting owners of large, rural properties from criminal liability was one aim of the pertinent amendments. Tape Recording, House General Government and Regulatory Reform, Full Committee, H.B. 2582, Apr. 19, 1995, Tape 99, Side B (statement of Rep. Ken Strobeck). However, a broader consideration of the legislative history reveals that the mental-state requirements were not added solely to protect owners of large tracts of private property, but were intended to more generally clarify that the statute targets people who facilitate events at which minors consume alcohol. Id. ; Tape Recording, House General Government and Regulatory Reform, Regulatory Reform Subcommittee, H.B. 2582, Apr. 3, 1995, Tape 23, Side A (statement of Rep. Ken Strobeck); Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 103, Side A (statement of Rep. Ken Strobeck).
*330 For example, Representative Strobeck emphasized the legislation's focused target in countering opposition to the bill. A representative of a rental property owners trade association expressed concern that the legislation would make landlords liable for "that which is being done on the property." Tape Recording, House General Government and Regulatory Reform, Regulatory Reform Subcommittee, H.B. 2582, Apr. 3, 1995, Tape 23, Side A (statement of Emily Cedarleaf); see Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 103, Side A (statement of Emily Cedarleaf). Representative Strobeck explained that he did not mean the statute to apply to commercial property owners who were "not aware" of "something [ ]going on behind a building." Tape Recording, House General *912 Government and Regulatory Reform, Regulatory Reform Subcommittee, H.B. 2582, Apr. 3, 1995, Tape 23, Side A (statement of Rep. Ken Strobeck). He specifically pointed to the word "knowingly" as indicating that "we are not expecting someone to know what is happening on every inch of their property even if they are not aware of somebody being there." Id. And he confirmed to the House sub and full committees as well as a Senate committee that addressed the legislation that the bill's target was the person who "opens the door," rather than an absent property owner. Id .; see also Tape Recording, House General Government and Regulatory Reform, Full Committee, H.B. 2582, Apr. 19, 1995, Tape 99, Side B (similar statement of Rep. Ken Strobeck); Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 103, Side A (similar statement of Rep. Ken Strobeck). Finally, as noted, the legislature removed a proposed provision that would have held property owners responsible for underage alcohol consumption that they "should have known" of. Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 103, Side A (statement of Sen. Joan Dukes); Tape Recording, Senate Business and Consumer Affairs Committee, H.B. 2582, May 16, 1995, Tape 106, Side A (statement of Sen. Joan Dukes).
Considered as a whole, that history persuades us that the legislature deliberately chose to include a culpable *331 mental state to define which property owners (or controllers) should be held responsible when minors consume alcohol at parties on their property and which should not. Under the statute, people who control property commit a violation when juveniles consume alcohol on the property only when they -the property controllers-knowingly allow that consumption. That is, the statute punishes people who engage in the culpable behavior of knowingly permitting their property to be used for an improper purpose. In stark contrast, the city ordinance creates a strict-liability crime, punishing property owners (in some instances by mandatory imprisonment) for conduct committed by other people on their property-conduct of which the property owners may not even be aware. Given the legislature's deliberate choice not to punish property owners (or controllers) in those circumstances, which may involve no culpability on the part of the property owner whatsoever, we conclude that the ordinance conflicts with the state criminal laws and is, therefore, preempted. See Robison , 202 Or. App. at 244, 120 P.3d 1285 (holding that state criminal law preempted a local ordinance when the ordinance created a strict liability offense for conduct the legislature had chosen to criminalize only when the defendant acted with a culpable mental state). The trial court did not err when it affirmed the municipal court's order allowing defendant's demurrer and declaring the ordinance unconstitutional.
Affirmed.

Article XI, section 2, provides, in part:
"The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."

ORS 471.410(1) states that a person "may not sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated." Violation is a Class A misdemeanor. ORS 471.410(5). Subsection (2) of the statute similarly prohibits people from providing alcohol to minors unless, under certain circumstances, the alcohol is provided by the minor's parent or guardian. Violation of that provision is a misdemeanor under some circumstances and a violation under others. ORS 471.410(5), (6).

Here, the legislature has chosen to criminalize certain conduct involving the provision of alcohol to minors, ORS 417.410(2), (5), and has chosen not to criminalize the related conduct described in subsection (3) of the same statute. Discerning legislative intent may be more challenging "when there is no state criminal law on the subject"; in that circumstance, "[t]he assumption * * * that the legislature intended to displace conflicting local criminal ordinances * * * does not apply" and a court "would have to ascertain whether the legislature, by repealing a statute or decriminalizing certain conduct, intended also to preclude local prohibition and [criminal] punishment of that conduct." Dollarhide , 300 Or. at 502 n. 9, 714 P.2d 220 (emphasis added).

Plaintiff argues that the ordinance is a civil regulation, in part because CMC 5.03.010.080 permits a private person to commence an infraction or misdemeanor charge. The CMC does authorize citizen complaints, which may also be used to commence and serve as the basis for nonfelony criminal actions and commence felony criminal actions under ORS 131.005(3) and (4). That a private individual's complaint triggers the prosecution does not, however, change the nature of the proceeding from criminal to civil.