268 September 4, 2025 No. 795

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Terry HUNT,
*Plaintiff-Appellant,*

*v.*

Jay GOFFMAN,
Lisa E. Anderson, and James E. Ray,
as Trustees and in their individual capacities,
*Defendants-Respondents,*

*and*

DOES 1 TO 100,
*Defendants.*

Yamhill County Circuit Court
22CV26715; A182768

Jennifer K. Chapman, Judge.

Argued and submitted August 8, 2025.

Andrew R. Escobar argued the cause for appellant. Also on the briefs were Wendy M. Feng, Jason Shandler, and Seyfarth Shaw, LLP.

Gina Elliott argued the cause for respondents. Also on the brief were Darin M. Sands and Bradley Bernstein Sands, LLP.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Plaintiff appeals a general judgment dismissing his claims against defendants with prejudice, following defendants' successful motion to dismiss. Plaintiff argues that the trial court erred by (1) applying an incorrect statute of limitations to some of his claims; (2) miscalculating the time between the injury and the time plaintiff filed his claim; (3) concluding plaintiff failed to state a claim on some of his claims; and (4) dismissing his complaint with prejudice without granting him leave to amend. We affirm.

We recite the facts as taken from plaintiff's complaint and the motion to dismiss record. *See Chang v. Chun*, 305 Or App 144, 147, 470 P3d 410 (2020) (on review of motion to dismiss we "accept as true the allegations in the complaint" as well as reasonable inferences). In 2019, plaintiff sought to purchase a large property, the Del Mar Estate, consisting of a 25,000 square foot villa and approximately 10 acres of surrounding landscaping, from a trust administered by defendants-trustees. After the parties entered into a sales contract and plaintiff deposited $364,000 earnest money into escrow, plaintiff discovered that the property lacked irrigation and was burdened by several large liens. Plaintiff subsequently backed out of the sales contract and, eventually, received his earnest money back through arbitration. During the arbitration, plaintiff learned that defendants deliberately misled plaintiff about the irrigation issues and the liens.

Following the arbitration award, in 2022, plaintiff sued defendants for fraudulent misrepresentation, financial elder abuse (plaintiff was 65 years old at the time of the events at issue), conversion, intentional interference with a contractual relationship, and intentional infliction of emotional distress (IIED). Defendants moved to dismiss plaintiff's claims for various reasons, including that plaintiff's claims were filed too late and plaintiff failed to state a claim. The trial court agreed with defendants and dismissed plaintiff's claims with prejudice. This appeal followed.

*First Assignment of Error.* To begin, plaintiff argues that the trial court erred in determining that the general,

two-year catchall statute of limitations applied, ORS 12.110, as opposed to the more specific (and more generous) six-year statute of limitations for actions against a trustee, ORS 130.820(1), or for actions harming an interest in real property, ORS 12.080(3). Reviewing the trial court's interpretation of the relevant statutes for errors of law, *State v. Baldwin*, 341 Or App 665, 667, ___ P3d ___ (2025), we conclude that the trial court did not err.

A.   *Uniform Trust Code (ORS 130.820(1))*

The question of whether ORS 130.820(1) applies to plaintiff's claim is an issue of statutory interpretation. We interpret a statute by looking at its text and context, as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The text of that statute provides:

> "Notwithstanding ORS chapter 12 or any other provision of law, but subject to subsection (2) of this section, a civil action against a trustee based on any act or omission of the trustee, whether based in tort, contract or other theory of recovery, must be commenced within six years after the date the act or omission is discovered, or six years after the date the act or omission should have been discovered, whichever is earlier."

By its plain text, the statute applies to civil actions against trustees of any kind for *any* act or omission—a broad category of claims. And, as plaintiff notes, there is no limiting language that expressly limits it to claims brought by a trust beneficiary.

However, the context and legislative history of the statute tell a different story—one that ends with the conclusion that ORS 130.820(1) provides a statute of limitations applicable only to breach of trust claims. The statute was enacted as part of the Oregon Uniform Trust Code (OUTC) and is found in a section on remedies for breach of trust, and potential defenses to a breach of trust claim—including statute of limitations defenses. *See* ORS 130.800 (remedies for breach of trust); ORS 130.805 (damages for breach of trust); ORS 130.825 to 130.840 (limitations or releases of trustee's liability in specified circumstances); *see also City of Corvallis v. Pi Kappa Phi*, 293 Or App 319, 327, 428 P3d 905

(2018) (the context of a statute includes different parts of the same statute).

In addition to that helpful context, other subsections of ORS 130.820 lend support to our interpretation. As mentioned, ORS 130.820(1) provides that the six-year statute of limitations is "subject to subsection (2)." Subsection (2), in turn, shortens the time period that a beneficiary can bring a claim in a specific circumstance—when the trustee sends "a report by certified or regular mail that adequately discloses the existence of a potential claim and that informs the beneficiary of the time allowed for commencing a proceeding." ORS 130.820(2). Under plaintiff's proposed interpretation, it would make little sense for subsection (2), which shortens the statute of limitations for a certain category of claims brought by beneficiaries, to qualify subsection (1) which applies to any and all claims brought by anyone. Rather, the logical reading is that subsection (1) applies to all claims brought by beneficiaries, and subsection (2) limits that application for certain beneficiaries.

Most compellingly, the legislative history of ORS 130.820 confirms this commonsense reading of the statutory context. Several sections of the official commentary of the OUTC explicitly refer to ORS 130.820 as a limitation on the time for a beneficiary to bring a claim against a trustee. *See The Oregon Uniform Trust Code and Comments*, 42 Willamette L Rev 187, 218 (2006) (describing ORS 130.820 as a "period of limitation on action for breach of trust"); *id.* at 380 (identifying ORS 130.800 through 130.860 as "remedies for breach of trust"); *see also id.* at 189 (explanatory comments to the OUTC "serve as a tool to understanding what the provisions of the [OUTC] mean").

In addition, prior to enacting the OUTC, the legislature received testimony on key changes it would make to existing Oregon law by members of the model code's drafting committee. For the section which became ORS 130.820, a committee member testified that "[i]n addition to providing for two periods of limitation *consistent with current Oregon law*, this section cuts off a beneficiary's claims against a trustee after one year if the trustee discloses to the beneficiary specific information about potential claims." Exhibit F,

Senate Judiciary Committee, SB 275, Mar 22, 2005, (statement of Valerie Vollmar) (emphasis added). Current Oregon law at that time, codified at ORS 12.274, provided a six-year statute of limitations for actions "against [a] trustee * * * arising from any act or omission of the trustee *constituting a breach of duty.*" (emphasis added).

Moreover, an additional document considered by the legislature, titled "Oregon Uniform Trust Code: What It Is and the Extent to Which It Changes Oregon Law," explains further: "The Study Committee revised this section [eventually codified as ORS 130.820] to *conform* to ORS 12.274 for two of the periods of limitation. Subsections (1) and (3) *restate* the periods set forth in ORS 12.274." Exhibit F, Senate Judiciary Committee, SB 275, Mar 22, 2005 (emphases added). Thus, the legislature intended ORS 130.820 to conform to existing Oregon law that provided a general, six-year statute of limitations for claims against trustees for breach of duty; it did not intend to vastly enlarge the liability of trustees.[1]

In sum, plaintiff is not a beneficiary of the trust, and the trust owed no trust-related duties to him—thus, ORS 130.820(1) does not apply to him.

B.  *Property Interest (ORS 12.080(3))*

Contrary to plaintiff's contention, ORS 12.080(3)'s six-year statute of limitations does not apply to his claims. That statute applies, as relevant here, when there is "interference with or injury to any interest of another in real property," ORS 12.080(3), subject to certain exceptions that are not applicable. After turning to the statute's text, context, and legislative history, we conclude that it does not apply in cases, like plaintiff's, where a potential buyer who was fraudulently induced to purchase property backs out of the

---

[1] As plaintiff points out, other sections of the OUTC provide that trustees are "personally liable for torts committed in the course of administering a trust or for obligations arising from ownership or control of trust property" if they are personally at fault. ORS 130.845(2). Plaintiff's proposed interpretation, however, leads to absurd results. A person injured by a trustee who causes an accident when driving a car to deposit a check in the trust's bank account would have six years to sue, while a person injured in an identical accident when the trustee was driving to the grocery store to shop for themselves—not in their capacity as trustee—would only have two. There is no indication that the legislature intended such a result.

real estate sales contract. In those cases, the property interest, in fact, was not interfered with at all.

Beginning with the text and context, ORS 12.080(3) provides that "[a]n action for waste or trespass upon or for interference with or injury to any interest of another in real property," subject to certain exceptions not relevant here, must be commenced within six years. An "interest," as used in ORS 12.080(3), means "'a right to have the advantage accruing from anything; any right in the nature of property, but less than title; a partial or undivided right; a title to share.'" *Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 701, 375 P3d 463 (2016) (quoting *Black's Law Dictionary* 950 (4th ed 1968)); *Willms v. AmeriTitle, Inc.*, 314 Or App 687, 702, 499 P3d 79 (2021) (adopting definition of "any right in the nature of property" (internal quotation marks omitted)). Thus, under ORS 12.080(3), a real property interest is broad, but not limitless.

The legislative history of ORS 12.080(3) supports a narrower interpretation of the phrase "any interest of another in real property." Prior to 1973, the statute provided a six-year limitations period only for actions for "trespass or waste." All other property-related actions fell into a two-year catchall statute of limitations. *See Goodwin*, 359 Or at 703-04, 705 n 3 (explaining history). However, in 1973, the legislature added the language of "any interest" in property in response to a Supreme Court case, *Martin v. Union Pacific Railroad*, 256 Or 563, 474 P2d 739 (1970). In that case, the plaintiff brought a claim for trespass against a railroad company for damage caused by a fire that originated on or near a railroad right of way, but the parties disputed whether the claim was a trespass claim, subject to a six-year statute of limitations, or a negligence claim, subject to a two-year statute of limitations. *Id.* at 564-65. The *Martin* court held that the fire was a trespass but called for a revision to the limitation statutes as they created different limitation periods for similar injuries to property interests:

> "There would appear to be no reason for providing different limitation periods in actions for invasions of interests in land, whether the action is in trespass or nuisance and whether the conduct causing the invasion is intentional, negligent, reckless or ultrahazardous."

*Id.* at 567. For example, a negligently caused fire that caused damage to a neighboring property *could* be analyzed as a negligence case—which only would be subject to a two-year statute of limitations—even though it shared similar qualities to trespass. The legislature, when amending ORS 12.080(3), expressly referred to *Martin* as its reason for doing so. Exhibit M, Senate Committee on Judiciary, SB 341, Mar 29, 1973 (memorandum from Steven J. Hawes, Deputy Legislative Counsel). Given that, prior to the revision, the statute was limited to trespass or waste, and the only reason the legislature added "interest in property" was in response to *Martin*'s desire to encompass claims of *similar* "invasions of interests in land" to trespass, it does not seem likely that the legislature sought to expand the reach of ORS 12.080(3) to include all injuries to a financial interest in property—a wholly different class of invasions.

Ultimately, we conclude that plaintiff's injuries do not fall within the ambit of ORS 12.080(3). As we understand it, plaintiff's interest was the interest of a buyer of real property after entering into a sales agreement. *See Beveridge v. King*, 292 Or 771, 778, 643 P2d 332 (1982) ("From the time they entered into an enforceable contract for the defendant to sell and the plaintiffs to buy the real property, the plaintiffs became the beneficial owners of the interests in this real property."). As plaintiff was never the legal owner of the Del Mar Estate, any real property interest he could have possessed would have to come from virtue of him having a beneficial, *i.e.*, equitable, property interest.

That equitable interest gives the buyer certain property rights, like possession, prior to the full purchase price being paid, and an injury to that equitable property interest is subject to the six-year statute of limitations in ORS 12.080(3). *Beveridge*, 292 Or at 778. In *Beveridge*, the plaintiffs-homebuyers entered into a contract to buy a new construction home from defendant. After moving in and discovering several issues with the home, the plaintiffs sued the defendant for failure to perform under the construction contract. 292 Or at 773. The plaintiffs brought their suit more than two years but less than six years after the issues occurred. *Id.* The Supreme Court concluded that the

plaintiffs were entitled to the longer statute of limitations in part because the plaintiffs, as the owners of an equitable interest in the property, had their property interest injured by the actions of the defendant, even though those actions occurred prior to the plaintiffs owning the property.[2]

The holding in *Beveridge* turns on several propositions. First, an injury to a buyer's equitable interest in property is an injury to a property interest under ORS 12.080(3). Second, as *Beveridge* implies, that injury can include events that occur during the period that the buyer is under contract to purchase the property. Finally, the buyer receiving the benefit of a longer period to bring suit under ORS 12.080(3) must actually possess the property interest at issue.

That last point is critical to plaintiff's claims here. Like the plaintiffs in *Beveridge*, plaintiff possessed a property interest during the time period he was under contract to purchase the property and might be entitled to redress events that occurred during that contract period. Unlike the plaintiffs in *Beveridge*, however, plaintiff here relinquished any property interest he might have had when he decided he no longer wanted to buy a property with irrigation issues and other encumbrances. Or, put differently, defendants' injury to plaintiff was a failed attempt to *induce* plaintiff to obtain a property interest under false pretenses, not an injury that diminished plaintiff's existing property interest.

Thus, the trial court did not err in concluding that ORS 12.080(3) did not apply, because defendants did not interfere with plaintiff's property interest.

*Second Assignment of Error.* Plaintiff next argues that, even if a two-year statute of limitations applies to his claim, the trial court erred in determining that two years had elapsed from the time of plaintiff's injury when dismissing his claims for fraudulent misrepresentation, intentional interference with a contractual relationship, and IIED. We disagree. Taking the facts in plaintiff's complaint as true, plaintiff knew or should have known about defendants' conduct in 2019, when the parties were under contract. *See*

---

[2] The Supreme Court also concluded that the plaintiffs' claim would be subject to a six-year statute of limitations regardless, due to ORS 12.080(1), a subsection related to breach of contract claims. 292 Or at 778-79.

*McGann v. Boyd*, 124 Or App 409, 412, 862 P2d 577 (1993), *rev den*, 319 Or 273 (1994) (claim for fraudulent misrepresentation accrues when plaintiff has either knowledge of fraud, or sufficient facts that would "excite attention and put a party on guard or call for an inquiry"). That is because plaintiff alleged in his complaint that by at least September 2019 he had "grave concerns about [defendants'] material representations and omissions regarding the property's irrigation, as well as the $3.9 million IRS lien that remained on the property." All that occurred later was plaintiff received additional evidence supporting the conclusion that defendants were, indeed, obfuscating regarding the irrigation and liens. Similarly, plaintiff's intentional interference and IIED claims were also based on events that occurred during the contract period. The trial court did not err in concluding that plaintiff's claims were filed too late.[3]

*Third Assignment of Error.* Plaintiff contends that the trial court erred in ruling, as a matter of law, that plaintiff's claims for financial elder abuse (claims 5 through 7) failed to state a claim.[4]

In order to plead an elder abuse claim based on the wrongful taking of money or property, plaintiff's complaint must demonstrate, "(1) a taking or appropriation (2) of money or property (3) that belongs to an elderly *** person, and (4) the taking must be wrongful." *Church v. Woods*, 190 Or App 112, 117, 77 P3d 1150 (2003); *see also* ORS 124.110(1)(a) (an action for financial abuse of an elderly person may be

---

[3] With the exception of the claims discussed in plaintiff's next assignment of error, nothing in this opinion should be construed to comment on the merits of plaintiff's late-filed claims. In addition, legislation passed in response to the COVID-19 pandemic affects this analysis but does not save plaintiff's claims. That legislation extended the deadline to file a claim to 90 days following the expiration of a state of emergency, if such a deadline would fall during a state of emergency. Or Laws 2020, ch 12 (1st Special Session), *amended by* Or Laws 2021, ch 199; Or Laws 2021, ch 499. That legislation, however, expired on December 31, 2021, and only extended statutory deadlines to that date. *See generally Mouton v. TriMet*, 331 Or App 247, 546 P3d 1, *rev den*, 372 Or 718 (2024) (explaining effect of legislation). Plaintiff does not identify an alternate legal source for extending the statutory deadline.

[4] Plaintiff also challenges the trial court's decision that the tort claims failed to state a claim. Our decision that the intentional interference and IIED claims were filed beyond the statute of limitations obviates the need to address that argument as to those claims. With regard to the conversion claim, plaintiff's argument is undeveloped, and we decline to address it.

brought "[w]hen a person wrongfully takes or appropriates money or property of" an elderly person). According to plaintiff, the defendants' (1) fraudulently inducing plaintiff to deposit $364,000 of earnest money into an escrow account and failing to return the money after the sale fell through; (2) cancellation of the purchase contract for the Del Mar Estate and selling to someone else; and (3) failure to pay attorney fees awarded in arbitration all amount to a wrongful taking of plaintiff's money and/or property interest.

We disagree. Under the elder abuse statutes, a "taking" is defined by its "ordinary meaning": "'to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, or use of[.]'" *See Church*, 190 Or App at 117 (quoting *Webster's Third New Int'l Dictionary* 2330 (unabridged ed 1993)) (applying that meaning in elder abuse claim). Crucially, none of the instances that plaintiff complains of involved a taking of money or property belonging to plaintiff by defendants, for their personal use or ownership.[5] Plaintiff's earnest money was placed into escrow—not with defendants; defendants did not retain plaintiff's property interest in the Del Mar Estate; and plaintiff's entitlement to attorney's fees was never taken *from* plaintiff. *See Bates v. Bankers Life and Casualty Co.*, 362 Or 337, 347, 408 P3d 1081 (2018) (noting that defendant's failure to pay insurance benefits that plaintiffs were entitled to, even if wrongful, could not constitute a taking of "money or property" under the elder abuse statutes because plaintiffs never gave defendants money in exchange for insurance benefits, but, rather, in exchange for insurance policies).

*Fourth Assignment of Error.* Finally, plaintiff argues that the trial court erred in dismissing his complaint with prejudice. We review such a decision for abuse of discretion and will affirm the court's ruling "unless its decision is not within the range of lawful alternatives." *Munson v. Valley Energy Investment Fund*, 264 Or App 679, 711, 333 P3d 1102 (2014) (internal quotation marks omitted). Although we are mindful that dismissal with prejudice is an extreme result, we are not persuaded that the trial court's decision was

---

[5] Because we conclude that no "taking" occurred, as required by the elder abuse statutes, we do not reach the issue of whether any purported taking was "wrongful."

outside the range of lawful alternatives. That is because, as the trial court found, the facts that led the court to its disposition could not be cured by amendment. Plaintiff filed his complaint too late, and defendants never "took" any money or property from plaintiff. In addition, plaintiff has not identified any way he would have amended his complaint to address the purported deficiencies. *See id.* at 712 (affirming dismissal with prejudice where the plaintiffs had not "indicated to the court how they would replead their claims if permitted"); *see also Caldeen Construction v. Kemp*, 248 Or App 82, 87-88, 273 P3d 174 (2021) (looking to "colorable merit of proposed amendments" in determining whether trial court abused its discretion in denying a motion for leave to amend complaint).

Affirmed.